IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**STEWART THOMAS MICHAELS,**

    **Plaintiff,**

v.                                                                                             Civil Action No. 5:15cv59
                                                                                             (Judge Stamp)

**DEE WEST, Director of Inmate Services;**
**BRIAN McCLAIN, Administrator; and**
**RANDY MANN,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Introduction

On May 12, 2015, the *pro se* plaintiff Stewart Thomas Michaels ("plaintiff"), an inmate then incarcerated at the North Central Regional Jail ("NCRJ") in Greenwood, West Virginia, initiated this civil rights action pursuant to 42 U.S.C. §1983 by filing a complaint along with a motion to proceed as a pauper and supporting documents. By Order entered May 13, 2015, plaintiff was granted permission to proceed as a pauper and, based on his Prisoner Trust Account Report ("PTAR"), payment of an initial partial filing fee was waived, although he was assessed the full filing fee. That same day, the undersigned conducted a preliminary review of this matter and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, and twenty-one (21) day summonses were issued for each of the defendants. On July 31, 2015, the defendants filed a motion to dismiss. On August 12, 2015, the undersigned issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of his right to file a response and that a failure to respond could result in the entry of a dismissal order against him. On August 28, 2015, plaintiff filed his Opposition to Defendants [sic] Motion to Dismiss. On September 4, 2015, the defendants filed a Reply to Plaintiff's Response. On September 14, 2015, the plaintiff filed a Motion to Strike Defendant's [sic] Reply to Plaintiff's

Response or in the Alternative, Motion for Leave to File an Additional Pleading to Address the Defendant's [sic] Unauthorized Response. On October 7, 2015 the defendants filed a Response to Motion to Strike. On October 22, 2015, plaintiff filed a Notice of Change of Address, indicating he has been released from jail.

This case is now before the undersigned for a Report and Recommendation pursuant to LR PL P 2.

## II. Contentions of the Parties

### A. The Complaint

In the Complaint, plaintiff alleges that since being incarcerated at the NCRJ on March 2, 2015, defendants Dee West, Director of Inmate Services ("West"); Brian McClain, Administrator ("McClain"); and Randy Mann ("Mann") continuously violated his First and Eighth Amendment rights to free exercise of his Asatru religion; freedom from cruel and unusual punishment; and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by:

1) refusing him food, by denying him the vegetarian diet he must follow, according to the tenets of his Asatru religious beliefs; and

2) denying him the right to practice his religiously-backed, sincerely held beliefs by their refusal to provide him with a "religiously sound" diet.

Plaintiff contends that in two months of incarceration at NCRJ,[1] he lost 31 pounds as a result of being refused food he is able to eat, and he is "suffering from vitamin deficiency and related problems."

---

[1] Elsewhere, plaintiff avers that "[f]rom Feb 19 2014 until October 29th 2014" he "was subjected to the same circumstances[;]" it is unclear whether he contends that the incidents at the NCRJ are the second time he has been denied vegetarian meals, or if the incidents at the NCRJ are the first. Further, these dates are inconsistent with the dates plaintiff says he has been incarcerated at NCRJ. Cf. Dkt.# 1 at 9; Dkt.# 1 at 7.

Plaintiff contends he has multiple filed grievances over the issues in his complaint, but pursued them only to Level One and Two, because "[t]here is no level 3 process in the jail."[2]

As relief, he seeks injunctive relief in the form of an Order directing the jail officials to provide him with a nutritionally adequate diet. Further, he seeks monetary damages of $150/day for every day that the jail officials refused to provide him with the requested diet, as well as a "base amount of $25000" [sic] in punitive damages.[3]

**Defendants' Motion to Dismiss**

The defendants attach an affidavit from Jackie T. Binion, Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority, and contend that the complaint should be dismissed because

1) plaintiff failed to exhaust his administrative remedies during his incarceration; and

2) even if the allegations were true, defendants are entitled to qualified immunity.

**Plaintiff's Opposition to Defendants' Motion to Dismiss**

Plaintiff reiterates his arguments and attempts to refute the defendants' on the same. He contends that the rule book he received upon arrival at the NCRJ only lists two steps in the grievance process, thus, he cannot be expected to exhaust an administrative remedy he was not informed of.

**Defendants' Reply to Plaintiff's Response**

The defendants argue that plaintiff's claim that there is no Level 3 to the grievance process lacks merit; in support, they attach a copy of the pages from the NCRJ inmate rule book explaining the three-level process, and reiterate their argument regarding plaintiff's failure to fully exhaust.

---

[2] Dkt.# 1 at 5.

[3] Dkt.# 1 at 11.

**Plaintiff's Motion to Strike Defendant's Reply**

Plaintiff argues that the defendants' reply is an impermissible response under Fed.R.Civ. Pro 7 and should be stricken from the record. He contends he has not produced a copy of the rule book he was given to prove his claim that there were only two levels, because the book was taken from him when he was released from jail.

**Defendants' Response to Motion to Strike**

The defendants aver that both the Federal Rules of Civil Procedure and this Court's Local Rule Civ. P. 7.02(b)(2) permit the filing of a reply brief in support of a motion, and reiterate their argument that the complaint should be dismissed for failure to exhaust.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. A "claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). In other words, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley, 355 U.S. at 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp., 477 U.S. at 322-23. The court must avoid weighing the evidence or determining the truth and limit its inquiry

solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

### IV. Analysis

**A. Exhaustion of Administrative Remedies under § 1997e**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. §1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. §1997(e)(a). Exhaustion as provided in §1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). An action under 42 U.S.C. §1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[4] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741, n. 6.

The PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). Pursuant thereto, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Id. at 2387 (emphasis supplied). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. See id. at 2393.

In Jones v. Bock, the Supreme Court of the United States concluded that "failure to exhaust is an affirmative defense under PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).

---

[4] Porter at 524.

However, it is a well-established Fourth Circuit principle that "the district court's authority to *sua sponte* dismiss an *in forma pauperis* complaint frivolous [is] broad enough to permit the court to dismiss a complaint on the basis of an affirmative defense that was apparent from the facts alleged in the complaint." Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 681-82 (4th Cir. 2005)(citing Nasim v. Warden, 64 F.3d 951, 954-55 (4th Cir. 1995)).

The WVDOC has established a three-level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections. The West Virginia Jail and Correctional Facility Authority's *Handbook of Inmate Rules and Procedure* explicitly sets forth the details for the process for filing and fully exhausting grievances:

> 1. If an inmate wishes to use the grievance procedure, jail personnel will provide the inmate with an inmate with an inmate grievance form.
>
> 2. The inmate shall complete the form, addressed to the Administrator; the form, as completed by the inmate, shall be transmitted to the Administrator's office by jail personnel without being read or altered and within a reasonable time, not later than the end of the shift.
>
> 3. The Administrator upon receipt of the grievance may reject the grievance if it appears on its face to have been filed in bad faith.
>
> 4. The Administrator, if the grievance is not rejected pursuant to Paragraph 3, shall provide the inmate an opportunity to be heard before a decision is made on the grievance. The Administrator may assign a staff member to investigate the complaint and report written findings within forty-eight hours and shall inform the inmate of such action.
>
> 5. The Administrator shall provide a written decision with regard to the grievance to the grieving inmate within twenty-four (24) hours of the receipt of the investigation report. Such written decision shall include a statement of the

action taken concerning the grievance, the reasons for such action, and procedures for appeal of the decision.

Finally, if an inmate is dissatisfied with the Administrator's decision, he must file an appeal of that Level Two decision to the Executive Director within five days of the receipt of the Administrator's decision, and must include a copy of the initial complaint and the Administrator's decision.[5]

Although the burden is not on Plaintiff to plead exhaustion, the §1983 form complaint of this Court that is given to inmates asks if the inmate followed the grievance procedure, and to attach grievances and responses. Plaintiff attached four grievances to his complaint, relating to his claims.[6] Plaintiff freely admits he did not file Level Three appeals of any of those administrative grievances.[7] As expected, the defendants argue that plaintiff did not fully exhaust. Plaintiff argues that there was not a third level mentioned in the rule book and thus, he could not file what he did not know existed. Upon review of the record, it is apparent that the defendants are correct, and that there is no question but that the plaintiff has failed to exhaust his administrative remedies.

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2nd Cir. 2004) (defendant

---

[5] Available at: http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=18978&Format=PDF; see also Dkt.# 26-1.

[6] Dkt.# 1-1 at 1 – 4.

[7] Dkt.# 1, §III(E) at 5; Dkt.# 25 at 1 – 2; and Dkt.# 27-1 at 1 – 2.

may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of §1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D. Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

Here, plaintiff has clearly failed to exhaust his administrative remedies. To the extent that exhaustion may be waived, plaintiff's claim that the NCRJ rule book did not set forth a third level to be exhausted not only has no merit, it does not excuse his failure to exhaust. Because plaintiff is now well outside of the time limits for bringing these claims, attempting to finish exhausting now would be futile, thus his claims must be dismissed with prejudice.

**B. Plaintiff's Motion to Strike Defendants' Reply to his Response to their Motion to Dismiss**

The plaintiff contends that the defendants' reply to his response in opposition to their dispositive motion should be stricken from the record because it is impermissible under Rule 7 of the Federal Rules of Civil Procedure. Plaintiff is mistaken. Fed. R. Civ. Pro. 7 addresses pleadings, specifically: a complaint; answer; an answer to a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third party complaint; and if the court orders one, a reply to an answer. Here, the defendants did not file an answer to the complaint, but rather, a Motion to Dismiss. A dispositive motion such as the defendants filed is not a pleading. Further, as noted *supra*, when a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be

construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Here, the defendants attached an affidavit to their Motion to Dismiss, thus it is construed here as a summary judgment motion. Rule 56 neither authorizes nor forbids a reply brief by the party moving for summary judgment. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1164 (10th Cir. 1998); Int'l Union, United Auto. Workers of Am. v. Keystone Consol. Indus., Inc., 782 F.2d 1400, 1408 (7th Cir. 1986), *withdrawn on reh'g*, 793 F.2d 810 (7th Cir. 1986) (Coffey, J., dissenting) (observing that Rule 56 ― "fails to mention . . . reply briefs."). Accordingly, Local Rule Civ. P. 7.02(b)(2) governs, as does the Local Rule of Prisoner Litigation Procedure 11.3. The defendants' reply was permissible.

## V. Recommendation

For the reasons stated herein, the undersigned **RECOMMENDS** that the defendants Motion to Dismiss (Dkt.# 18) be **GRANTED** and that the plaintiff's complaint be **DENIED** and **DISMISSED with prejudice.**

Further, the undersigned **RECOMMENDS** that the plaintiff's pending Motion to Strike (Dkt.# 27) be **DENIED as moot.**

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by December 10, 2015**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th

Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk of Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff via certified mail, return receipt requested, at his last known address as reflected on the docket. The Court further directs the Clerk to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: November 25, 2015

*/s/* James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE
